**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

IN RE: Chapter 11

RLSV, INC.,[1] Case No. 6:24-bk-02488-GER

Wind-Down Debtor.

---

**JOINT OBJECTION AND RESPONSE TO MOTION TO MODIFY THE DISCHARGE INJUNCTION UNDER 11 U.S.C. §§ 524 AND 1141**

The Red Lobster GUC Trust (the "Trust"), the Reorganized Debtors,[2] and the Purchaser (as defined below), by and through their respective undersigned counsel (collectively, the "Objectors"), hereby jointly respond in opposition to the *Motion to Modify the Discharge Injunction Under 11 U.S.C. §§ 524 and 1141 Solely to Permit Nominal Prosecution of Illinois Premises Liability Action* [ECF No. 362] (the "Motion") filed by Latrece Millender ("Ms. Millender" or the "Movant"). In the Motion, Ms. Millender seeks to modify or clarify the discharge injunction to permit her to prosecute an Illinois premises-liability action against Red Lobster Restaurants LLC, Red Lobster Hospitality LLC, and Red Lobster Management LLC (collectively, the "Red Lobster Entities"). Preliminarily, the core discharge-injunction issue raised by Ms. Millender has already been ruled upon by the Court in its *Order Denying Motions for Relief From Discharge Injunction* [Case No. 24-02486, ECF No. 1546] (the "Order Denying Relief From Discharge Injunction")—a position subsequently reaffirmed in the *Order Denying (1) Motion to*

---

[1] The last four digits of RLSV, Inc.'s federal tax identification number is 6180, and its mailing address is 450 S. Orange Avenue, Suite 800, Orlando, FL 32801. The Chapter 11 cases of affiliates of RLSV, Inc. (collectively, the "Debtor Affiliates," with RLSV, Inc., the "Debtors") were closed effective as of December 27, 2024. *See* Case No. 6:24-bk-02486-GER at ECF No. 1549.

[2] As that term is defined in the Plan (as subsequently defined). However, for purposes of this Response, the Reorganized Debtors shall exclude Red Lobster Management LLC.

*Compel Settlement, (2) Motion to Allow Late-Filed Claim, and (3) Motion for Relief from Discharge Injunction* [ECF No. 339] (the "Second Order Denying Relief From Discharge Injunction") and *Order Denying Reconsideration* [ECF No. 359] (the "Order Denying Reconsideration of Second Order"). As further explained below, Ms. Millender's proposed "nominal" prosecution would still impose significant financial and litigation burdens because of the applicable self-insured retention, and would undermine the discharge and fresh-start protections in the Plan (as subsequently defined). The Objectors respectfully state as follows:

## I. Factual Background

### A. Case Background

1. On May 19, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. On May 20, 2024, the Debtors filed an *Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Enter into the New Insurance Program, (II) Authorizing Assumption of the Existing Insurance Program, and (III) Granting Related Relief* (the "Zurich Insurance Motion") [ECF No. 41].

3. On May 21, 2024, the Court held a hearing on the Zurich Insurance Motion.[3]

[3] By this Objection, the Reorganized Debtors do not intend to: (i) alter, modify, or otherwise amend the terms and conditions of, or the coverage provided by, any insurance policies issued at any time to any of the Debtors, their affiliates or predecessors of any of the foregoing or of any agreements related thereto (collectively, the "Insurance Contracts"); (ii) alter or modify the duty, if any, that any applicable insurer or third party administrator (each, an "Insurer," and together, the "Insurers") has to pay claims covered by any alleged applicable insurance policy; (iii) alter or amend any rights of an Insurer under any Insurance Contract to seek payment or reimbursement from the Debtors or any of their affiliates as a prepetition unsecured claim; (iv) create or permit a direct right of action by the Movant against any Insurers; (v) alter or amend the rights of any Insurer with respect to any deductibles or self-insured retentions under any allegedly applicable insurance policy; or (vi) preclude or limit, in any way, the rights of any Insurer to contest and/or litigate the existence, primacy and/or scope of available coverage under any allegedly applicable insurance policy.

4. On May 22, 2024, the Court entered an *Order (I) Authorizing the Debtors to Enter into the New Insurance Program, (II) Authorizing Assumption of the Existing Insurance Program, and (III) Granting Related Relief* (the "Zurich Insurance Order") [ECF No. 154].

5. In the Zurich Insurance Order, the Court authorized and directed the Debtors to enter into a new insurance program and to perform their obligations thereunder. [ECF No. 154, ¶ 2].

6. On September 4, 2024, the Debtors filed their *Second Amended Joint Chapter 11 Plan for Red Lobster Management LLC and Its Debtor Affiliates* [ECF No. 1124] (the "Plan").

7. As part of the Plan, and as set forth in the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Adequacy of the Disclosure Statement on a Final Basis, (II) Confirming the Joint Chapter 11 Plan for Red Lobster Management LLC and its Debtor Affiliates, (III) Setting Deadlines, and (IV) Setting Post-Confirmation Status Conference* [ECF No. 1140] (the "Confirmation Order"), the Court approved and authorized the Debtors to enter into that certain Assumption and Assignment Agreement between and among the Debtors, Zurich and RL Investor Holdings LLC ("Purchaser"), which is attached to the Confirmation Order as Exhibit C (the "Zurich Agreement").

8. On September 16, 2024, the Debtors filed the *Notice of Occurrence of the Effective Date of the Debtors' Second Amended Joint Chapter 11 Plan, Dated September 4, 2024* [ECF No. 1177], setting forth that the effective date of the Plan occurred on September 16, 2024 (the "Effective Date").

**B. Discharge and Plan Injunction**

9. As set forth in Article VIII.A of the Plan, upon the Effective Date, the discharge and release provisions became effective pursuant to 11 U.S.C. § 1141(d)(1)(A). In support of those

discharge and release provisions, the Plan includes a permanent injunction prohibiting parties from taking any action to collect on any indebtedness against the Reorganized Debtors:

> Except as otherwise expressly provided in the Plan or the Confirmation Order with respect to the Plan, all Persons who have held, hold, or may hold any Claims or Causes of Action against, or Interests in, any of the Debtors that have been released, discharged, or are subject to release or exculpation hereunder are permanently enjoined, from and after the Plan Effective Date, from taking any of the following actions against any of the Debtors, the Reorganized Debtors, the Wind-Down Debtor(s), the GUC Trustee, as applicable, or any of the other Exculpated Parties or any of the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with any such Claim, Cause of Action or Interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any of the Exculpated Parties or Released Parties on account of or in connection with any such Claim, Cause of Action or Interest; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against any of the Exculpated Parties, Released Parties or their property on account of or in connection with or with respect to any such Claim, Cause of Action or Interest; and (4) asserting any right of setoff or subrogation against any obligation due from any of the Exculpated Parties, Released Parties or against their property on account of or in connection with any such Claim, Cause of Action or Interest unless, with respect to setoff, such holder has Filed a motion requesting the right to perform such setoff on or before the Plan Effective Date or Filed a Proof of Claim that asserts or preserves any such right, and until such motion has been granted or the Filed Proof of Claim is Allowed. *See* Article VIII.A.5.

### C. Purchase Agreement

10. The Purchaser is a party to that certain Amended and Restated Purchase Agreement, dated as of August 22, 2024 (the "Purchase Agreement"), pursuant to which it purchased the ownership and operation of corporate-owned and franchised restaurants operating under the "Red Lobster" brand, as further detailed therein and in the Plan. *See* Notice of Filing Plan Supplement [ECF No. 941], Ex. A.

11. The Purchase Agreement describes in detail the liabilities that the Purchaser assumed in connection with the transaction. *See* Notice of Filing Plan Supplement [ECF No. 941], Ex. A, § 2.3 (definition of "Assumed Liabilities"). The definition of "Assumed Liabilities" does not include pre-petition tort litigation or other causes of action against the Reorganized Debtors.

*Id*. In fact, the Purchase Agreement expressly excludes "any tort liabilities of any [Reorganized Debtor]" and "all Excluded Employee Liabilities." *See* Notice of Filing Plan Supplement [ECF No. 941], Ex. A, §§ 2.4(e) and (g) (definition of "Excluded Liabilities"). In turn, Excluded Employee Liabilities encompasses liabilities arising under any federal, state, local or non-U.S. employment Law or other Law relating to employment, discrimination, classification, wages and hours. *Id.* § 1.1.

**D. Reorganized Debtors' Insurance Policies**

12. The Reorganized Debtors and Purchaser hold a general commercial liability policy from Zurich American Insurance Company ("Zurich"), policy number GLO 0176236-05, which provides $20 million in aggregate coverage and $1 million in personal injury coverage per claimant for the applicable coverage period. *See Declaration of Tonya Heron in Support of Joint Objection to Motion to Modify the Discharge Injunction Under 11 U.S.C. §§ 524 and 1141* ("Heron Declaration") filed on the docket at ECF No. [377], ¶ 4.

13. The Reorganized Debtors' and Purchaser's general liability claims after November 1, 2022, are subject to self-insured retention ("SIR") of $500,000 per claim. *See* Heron Declaration, ¶ 5. Unlike a deductible, the SIR creates exposure to the Reorganized Debtors and Purchaser for defense costs and expenses, as well as initial liability, if any, up to the amount of the SIR. *See* Heron Declaration, ¶ 7.

14. The Movant's claim, if pursued to litigation, would trigger coverage (following satisfaction of the applicable SIR obligations) under the Zurich insurance policy. *See* Heron Declaration, ¶¶ 5-7.

**E. Pre-Petition SIR Exposure**

15. The Reorganized Debtors estimate that they have nearly 100 active matters in litigation on account of pre-petition claims that are each subject to various SIRs. *See* Heron Declaration, ¶ 8. This does not include additional threatened litigation matters. *Id*.

16. The Reorganized Debtors and Purchaser estimate that the SIR obligations on account of pre-petition litigation that is currently outstanding range from $5 million to $25 million. *See* Heron Declaration, ¶ 9. This does not include SIR obligations that would arise with lawsuits not yet filed. *Id.*

**F. The Movant's Underlying Claim**

17. The Movant alleges that she slipped and fell on April 15, 2024, at a Red Lobster restaurant located at 9500 SW Hwy, Oak Lawn, Illinois 60453 (the "Incident"). Almost two years later to the day, on April 13, 2026, the Movant filed a complaint in the Circuit Court of Cook County, Illinois, Case No. 2026 L 004221 (the "Illinois Action"), asserting premises-liability claims against the Red Lobster Entities for a purported slip and fall. At no time has there been a trial or resolution regarding underlying liability or damages.

**G. Notice of the Bankruptcy and Bar Date**

18. Since the Movant waited two years (minus two days) to file suit after the purported Incident, the Movant was not a known creditor at the time of the Debtors' bankruptcy filing.

19. The Debtors' bankruptcy, however, was widely publicized in national and international news outlets. Moreover, the Debtors, through Epiq, caused a notice of the bankruptcy and bar date for filing a proof of claim to be published in The Wall Street Journal and the Orlando Sentinel. *See* Affidavit at ECF Nos. 485 and 1149. Accordingly, at a minimum, the Movant received notice through publication.

20. The bar date was July 28, 2024, after the date of the Incident, but the Movant did not file a proof of claim or otherwise assert her claim in the bankruptcy case prior to filing suit on April 13, 2026.

**H. The Court's Order Bars This Action**

21. In its Order Denying Relief From Discharge Injunction entered on December 26, 2024, the Court ruled upon the exact same issue raised by the Movant. In that order, the Court denied motions for relief from the discharge injunction concluding that "the Reorganized Debtors would be financially burdened with funding the self-insured retention because an obligation of Purchaser is an obligation of the Reorganized Debtors." *See* Order Denying Relief From Discharge Injunction at page 4. The Court denied a similar request in the Second Order Denying Relief From Discharge Injunction. As set forth in the Heron Declaration, the facts related to the financial burden on the Reorganized Debtors based on the claims underlying the Order Denying Relief From Discharge Injunction and the Second Order Denying Relief From Discharge Injunction also apply here. *See* Heron Declaration, ¶¶ 10-12. The Objectors respectfully request that the Court take judicial notice of the Order Denying Relief From Discharge Injunction, the Second Order Denying Relief From Discharge Injunction, the Order Denying Reconsideration of Second Order, the Zurich Insurance Order, the Plan, the Plan Supplement, and the Confirmation Order.

## II. Objection

**A. The Movant's Claim Was Discharged and Subject to the Permanent Injunction**

22. In accordance with Article VIII.A of the Plan, the Movant's claims are barred, discharged and subject to a permanent injunction, and the Movant has no entitlement or ability to recover, or to take any steps to recover, from the Reorganized Debtors as set forth in Article VIII.A

of the Plan. The Movant has provided no basis for why her claims are not subject to the discharge and permanent injunction as they relate to the Reorganized Debtors.

**B. The Movant May Not Sue the Reorganized Debtors**

23. Ms. Millender requests authority to sue the Red Lobster Entities as nominal defendants "to the extent necessary to establish liability and insurance coverage, with recovery limited to insurance proceeds and without any collection, execution, or enforcement against the Reorganized Debtors or their property." Motion ¶ 3. This is simply not possible under the terms of the Reorganized Debtors' insurance policies. Any attempt by Ms. Millender to assert her claims is contrary to this Court's Order Denying Relief From Discharge Injunction, developed case law, and the underlying purpose of the discharge in the Plan.

24. Permitting Ms. Millender to pursue her claims against any of the Reorganized Debtors (even nominally) would pose a threat to the Reorganized Debtors' business and would be inconsistent with the purpose of the discharge and injunction. The Reorganized Debtors and Purchaser would be required to pay $500,000 before the applicable insurer would pay any amount—including with respect to defense costs, settlements, or judgments.[4]

25. Consequently, the Reorganized Debtors and Purchaser would be directly impacted financially before the applicable insurer has any liability, which is contrary to the purpose of the discharge—providing the Reorganized Debtors with a fresh start. This situation is the same as the matter upon which this Court already ruled in its Order Denying Relief From Discharge Injunction and Second Order Denying Relief From Discharge Injunction. *See also In re CJ Holding Co.,* No. 16-33590, 2018 WL 3965225, at *1, 3 (Bankr. S.D. Tex. Aug. 15, 2018) (court denied the

[4] The Purchaser is the top operating company of the reorganized business. The Reorganized Debtors and Purchaser do not operate nor exist in silos. On the contrary, they operate together to foster a successful reorganized business. *See* Heron Declaration, ¶ 10. The Purchaser and each of the Reorganized Debtor subsidiaries have intercompany balances to one another. *See* Heron Declaration, ¶ 11.

plaintiffs' request for relief from the discharge because, under the insurance policies, the reorganized debtor would be "required to pay the first million, and five of the following six million in related expenses/recoveries" before the insurance kicked in, which would "frustrate" the discharge and the fresh start policy); *see also In re Tailored Brands, Inc*., No. 20-33900, 2021 WL 2021472, at *3-4 (Bankr. S.D. Tex. May 20, 2021) ("An application of the insurer exception must be predicated on the debtor's complete insulation from any 'interference with [its] fresh start in economic life.' … The Bankruptcy Code assures *Tailored Brands* finality"); *see also In re Columbia Gas Transmission Corp.*, 219 B.R. 716 (Bankr. S.D.W. Va. 1998) (dismissing claims against a corporate debtor because the excess insurer's liability was not triggered until the corporate debtor was "legally obligated to pay" above its self-insured retention of $200,000 including certain defense costs, and requiring the corporate debtor to defend against an insurance claim in litigation would violate the Bankruptcy Code's "fresh start policy").

26. In *In re CJ Holding Co*., the bankruptcy court denied a request similar to Ms. Millender's Motion. There, tort plaintiffs sought relief from the bankruptcy court post-confirmation/reorganization to sue the reorganized debtors "solely for the purpose of recovering proceeds from the Debtors' insurance policies." *Id*. at *1. The court specifically noted that the "exception" of "proceeding to prosecute litigation claims against a reorganized debtor solely for the purpose of collecting insurance proceeds … is not available if the debtor is required to incur substantial costs in litigation." *Id*. at *2. The court denied the plaintiffs' request because, under the insurance policies, the reorganized debtor would be "required to pay the first million, and five of the following six million in related expenses/recoveries" before the insurance became available. Such relief would "frustrate" the discharge and the fresh start policy as supported by the case law. *See id.*

27. Other courts have also held that litigants cannot pursue a debtor's insurer for debts discharged in bankruptcy if the debtor would face economic disadvantage in defending the litigation. *See, e.g., Nice v. Wheeling Pittsburgh Steel Corp.*, 619 F. Supp. 2d 487, 489 (S.D. Ohio 2008) (noting that the bankruptcy court only permitted the case to proceed against the insurer to the extent the debtor would not be required to pay the $500,000 self-insured retention amount and that the tort claimant would only be entitled to monetary recovery to the extent any damage award exceeded $500,000); *In re Columbia Gas Transmission Corp.*, 219 B.R. at 720-21 (denying motion to proceed against insurer where discharged debtor would be required to advance its own defense costs); *Perez v. Cumberland Farms*, 213 B.R. 622, 624 (D. Mass. 1997) (only allowing a case to proceed against the debtor on the condition that the claimant "indemnify the [d]ebtor for any unreimbursed expenses of defending the suit, including interest, regardless of the ultimate outcome" because "[a]ny economic loss to the Debtor would . . . result in the violation of the statutory injunction of 11 U.S.C. § 524(a).").

28. The cases cited by the Movant are easily distinguishable. First, in *In re Jet Florida Systems, Inc.*, 883 F.2d 970 (11th Cir. 1989), the Eleventh Circuit considered a claim in which the insurer, not the debtor, was potentially liable for the third-party claim. The Eleventh Circuit acknowledged the concern that allowing the underlying lawsuit to proceed against the reorganized debtor nominally "would frustrate the fresh-start policy embodied in the Code in one way-by requiring the bankrupt to spend sums in defending the lawsuit." *Id.* at 976 ("to allow suits of this nature to go forward could possibly have the effect of draining funds that would more properly be used in the revitalization of the reorganized corporation"). However, the Eleventh Circuit cited two factual circumstances (neither of which are present here) as the reason for allowing the litigation to move forward nominally against the reorganized debtor: (i) there was no effective

means for determining whether the reorganized debtor or the insurer would be liable for the cost of the litigation and (ii) the practical and economic realities compelled the insurer to defend the underlying action because of the potential liability faced by the insurer if it was in fact liable for the cost and any resulting recovery from the underlying lawsuit. *Id.* at 976 ("we find that the possibility that the debtor will be responsible to pay any amount associated with defending this action so remote that the fresh-start policy is simply not defeated"); *see also Jones v. Pilgrim's Pride, Inc.*, 741 F. Supp. 2d 1272, 1278 (N.D. Ala. 2010) ("*Jet Florida* is silent about the specific situation of a partially self-insured corporate debtor under § 524(e); instead, it only explicitly addresses those instances in which an insurer, and not the debtor, is potentially liable for the third-party claim, and any actual financial exposure to the debtor is extremely remote").

29. Second, *SuVicMon* and *Le Centre* actually support the Objectors' view while *W.G. Wade Shows* is factually distinguishable. In simply ruling that a discharge injunction barred fraudulent-transfer claims against the debtor but not against an alleged transferee, the Eleventh Circuit specifically noted that "it must be sufficiently certain that maintaining suit against the debtor will not place any economic burden on the debtor, such that the debtor's fresh start will not be interfered with." *SuVicMon Dev., Inc. v. Morrison*, 991 F.3d 1213, 1223 (11th Cir. 2021). The Eleventh Circuit agreed that the "bankruptcy court properly exercised its discretion in determining that the proposed litigation *could impose economic burdens* on [the debtor] and hence did not meet the second *In re Jet Florida* requirement" and also stated that "there [wa]s reason to think that the litigation *could interfere with the fresh start* to which [the debtor] is entitled." *Id.* at 1225, 1227 (emphasis added). Similarly, the Eleventh Circuit in *In re Le Centre on Fourth, LLC* upheld a bankruptcy court in prohibiting claimants from proceeding with their nominal claims against released non-debtor parties because it could impose an economic burden on the debtors. 17 F.4th

1326, 1339 (11th Cir. 2021). Accordingly, *SuVicMon* and *In re Le Centre on Fourth* actually support this Court denying the Movant's Motion. While *In re W.G. Wade Shows, Inc.* does stand for the concept that "Section 524(a) does not affect the liability of the insurer," because "the 'fresh start' policy of the Code was not intended to furnish a shield to third parties," the facts here are easily distinguished. 234 B.R. 185, 188 (Bankr. M.D. Fla. 1999). In *Wade*, the only risk to the debtor was potentially having increased premiums from its insurance carrier in the future. *Id.* at 189. As this Court has already recognized, the Reorganized Debtors' fresh start would be impacted because of the actual cost of defense and the SIR obligations.

30. The Movant's out-of-circuit cases are also distinguishable. In *Green v. Welsh*, the Second Circuit permitted the claimant to establish the debtors' liability only as a prerequisite to recovery from the insurer because it would not affect the debtors' fresh start. 956 F.2d 30, 33 (2d Cir. 1992). In *Matter of Edgeworth*, the Fifth Circuit specifically noted that a situation where the debtor's fresh start could be affected by having to pay defense costs or otherwise come out of pocket could prevent a suit against a debtor even nominally. 993 F.2d 51, 54 (5th Cir. 1993) (The debtor "has not asserted that he will be required to pay the costs of his defense against appellants' suit or that the insurance company denied coverage or is defending under a reservation of rights. Such threats to [the debtor]'s pocketbook might require a different result under § 524. Thus, as long as the costs of defense are borne by the insurer and there is no execution on judgment against the debtor personally, section 524(a) will not bar a suit against the discharged debtor as the nominal defendant."). The Seventh Circuit similarly noted in *Matter of Shondel* that the "'determination [of liability] will neither deplete the debtor's assets or otherwise interfere with the administration of the bankruptcy proceeding, nor hinder the debtor's fresh start at the close of the proceeding. Rather, it will operate only as a prerequisite to recovery against another entity.'" 950 F.2d 1301,

1307 (7th Cir. 1991) (quoting *In re Fernstrom Storage & Van Co*., 938 F.2d 731, 734 (7th Cir. 1991)) (additional citation and internal quotation omitted). That is not the case here. The relief requested by the Movant, if granted, would directly affect the pocketbook of parties entitled to a fresh start.

31. Specifically, in this case, there is no dispute that the Reorganized Debtors and Purchaser have a SIR obligation in connection with the Zurich insurance policy. *See* Heron Declaration, ¶¶ 5-7. It is a certainty that the Reorganized Debtors and Purchaser will incur significant liability in the form of SIR obligations in connection with defending the Movant's claim before the insurer contributes a dollar. The insurer is not motivated to defend the action and, even if it did, the defense costs and any potential recovery would be passed off to the Reorganized Debtors and Purchaser until the applicable SIR is satisfied. The facts considered by the Eleventh Circuit in *Jet Florida Systems* are not present here and, as a result, the case is distinguishable. Moreover, there are no facts here that differentiate this situation from this Court's Order Denying Relief From Discharge Injunction and the Second Order Denying Relief From Discharge Injunction; thus, the law of the case doctrine should apply. *See In re Cummings*, 277 F. App'x 946, 949 (11th Cir. 2008) (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815–16, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988)) (citation omitted) (under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues of subsequent stages of the same case.").

32. Further, the Movant's Illinois policy arguments are not persuasive because state procedural rules cannot override the Bankruptcy Code and the confirmed Plan. In *Marchlik v. Coronet Ins. Co*., the Illinois Supreme Court actually dismissed the plaintiffs' case as the "[p]ublic policy of Illinois preclude[d] the use of [its] courts as the forum for cases under the Wisconsin

direct action statutes and [noted that] application of the exclusionary rule does not violate the full-faith-and-credit provisions of the Federal constitution." 239 N.E.2d 799, 803 (Ill. 1968). If the Reorganized Debtors must be a real defendant, as the Movant argues pursuant to *Marchlik*, then they bear the burden of defending the case. Again, because of the SIR, there are no insurance proceeds to reach until the Reorganized Debtors and Purchaser have paid out a minimum of $500,000. This, in turn, would deny the Reorganized Debtors their fresh start. Accordingly, the Motion should be denied.

**C. Movant Received Proper Notice**

33. The Movant was not a known claimant on the Petition Date or on the date of service of other relevant filings such as the bar date notice as the Movant's complaint in the Illinois Action was filed on April 13, 2026. *See In re Charter Int'l Oil Co.*, No. 84-319-BK-J-GP, 2007 WL 879176, at *5 (Bankr. M.D. Fla. Mar. 14, 2007) ("An unknown creditor is one whose identity or claim is not reasonably ascertainable or is merely conceivable, conjectural, or speculative."). "It is well-settled that 'an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their [claims].'" *In re Charter Co.*, 125 B.R. 650, 654 (M.D. Fla. 1991) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

34. Here, notice was provided through publication in The Wall Street Journal and the Orlando Sentinel as part of an effort to ensure all parties were properly noticed. Since the Movant filed an action only recently, notice through publication was sufficient as she qualifies as an unknown creditor. *See In re Charter Int'l Oil Co.*, 2007 WL 879176, at *6 ("In bankruptcy proceedings, publication notice is legally adequate notice to unknown creditors."); *see also In re Charter Co.*, 125 B.R. at 656 (debtors are "not required to give actual notice to creditors with

merely conceivable, conjectural or speculative claims"). In fact, given the lack of prosecution for nearly two years of a claim alleged to have arisen on April 15, 2024, it was fair to assume that any claim had been abandoned. *See id.* (if debtor "reasonably believed, or could have reasonably believed, that [claimant] had abandoned its claim, then even [debtor's] actual or constructive knowledge of a remote possibility of a claim by [claimant] would not raise [claimant] to the level of a known creditor deserving of actual notice of the bar date").

## III. <u>Conclusion</u>

35. The Movant's claim has been discharged. Accordingly, there is no need to "clarify" the injunction or discharge—this Court's orders speak for themselves. Permitting the Movant to proceed with the Illinois Action, even nominally, would be a direct attack on the assets of the Reorganized Debtors and expose the Reorganized Debtors to potential liabilities and expenses on account of a pre-petition claim subject to the discharge and injunction provisions in the Plan. This Court's orders, the Plan, and case law bar such an attack. Granting the Motion would mire the Reorganized Debtors in litigation with significant post-discharge exposure, thus causing prejudice to the Reorganized Debtors and diverting valuable resources from revitalization of the business to pay millions on account of pre-petition discharged SIR obligations, which would create a substantial hardship on the Reorganized Debtors. *See* Heron Declaration, ¶¶ 11-12. Further, it would be in direct contradiction to the Court's Order Denying Relief From Discharge Injunction and the Second Order Denying Relief From Discharge Injunction. "[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995). Claimants like the Movant cannot sit on their rights throughout the bankruptcy case and then upset a confirmed plan years later requesting relief that would allow them to recover outside of the claims process and ahead of similarly situated creditors.

*See, e.g., In re Winn-Dixie Stores*, Inc., 381 B.R. 804, 809-10 (Bankr. M.D. Fla. 2008) ("It is the policy of this Court that a creditor cannot reasonably expect to sit on its rights throughout the process leading up to confirmation, then argue that it is entitled to relief post-confirmation, without consideration to the specified terms of the confirmed plan . . . . To hold otherwise would render the terms of the confirmed plan meaningless and open pandora's box, as there would be no finality or resolution [and undercut] the entire concept behind confirmation of a plan."). As a result of the foregoing, any claim asserted by the Movant against the Reorganized Debtors is both released and permanently enjoined. Moreover, the Movant is enjoined from taking any further action to continue the Illinois Action or collect against the Reorganized Debtors.

**WHEREFORE**, the Objectors, for the reasons set forth herein, respectfully request that the Court enter an Order denying the Movant's Motion and provide for such other relief as is just and proper.

***Remainder of Page Left Intentionally Blank***

Dated: November 3, 2026

Respectfully submitted,

/s/ *Sarah L. Primrose*
W. Austin Jowers (admitted *pro hac vice*)
Jeffrey R. Dutson (admitted *pro hac vice*)
Sarah L. Primrose (FL Bar No. 98742)
Christopher K. Coleman (admitted *pro hac vice*)
Brooke L. Bean (admitted *pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Email: ajowers@kslaw.com
jdutson@kslaw.com
sprimrose@kslaw.com
christopher.coleman@kslaw.com
bbean@kslaw.com

*Counsel for the Reorganized Debtors (excluding Red Lobster Management LLC) and the Purchaser*

/s/ *Jessey J. Krehl*
Joseph A. Pack, Esq. (Florida Bar No. 117882)
Jessey J. Krehl, Esq. (Florida Bar No. 1025848)
**PACK LAW, P.A.**
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Telephone: (305) 916-4500
Email: joe@packlaw.com
jessey@packlaw.com

- and -

**PACHULSKI STANG ZIEHL & JONES LLP**
Robert J. Feinstein, Esq. (admitted pro hac vice)
Bradford J. Sandler, Esq. (admitted pro hac vice)
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: bsandler@pszjlaw.com
rfeinstein@pszjlaw.com

*Co-Counsel to Red Lobster GUC Trust*

*Filer's Attestation: Pursuant to Local Rule 1001-2(g)(3) regarding signatures, Jessey J. Krehl attests that concurrence in the filing of this paper has been obtained.*